UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KAZEM MOUSAVI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-0003-CVE-JFJ |
| | ) | |
| JOHN CHRISTNER TRUCKING, LLC and | ) | |
| THREE DIAMOND LEASING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court is Defendants John Christner Trucking, LLC and Three Diamond Leasing, LLC's Motion to Dismiss and Brief in Support (Dkt. # 9). Defendants argue that plaintiff has failed to state a claim upon which relief can be granted arising out of plaintiff's allegations that defendants invaded his privacy by installing a surveillance device inside the cab of his tractor-trailer. Plaintiff responds that he has adequately alleged claims arising under federal and state law, and he asks the Court to deny defendants' motion to dismiss in its entirety.

**I.**

Kazem Mousavi was hired as a truck driver by John Christner Trucking, LLC (JCT) in October 2012. Dkt. # 2, at 3. Mousavi is an American citizen of Iranian descent, and he states that he is the only driver of Iranian descent who worked for JCT. Id. at 5. JCT offers its drivers a lease purchase program through a related entity, Three Diamond Leasing, LLC. Id. at 3. On April 6, 2017, Mousavi was informed by John Mallory, an employee of JCT's safety department, that a new camera was going to be installed in Mousavi's truck. Id. Mousavi's truck already had a forward-facing camera that recorded activity outside of the cab of the truck, and he objected to the installation

of a new camera if it could record activity inside the truck. Id. He claims that he threatened to quit if he could be videotaped inside the truck or if his conversations could be monitored. Id. Mallory assured Mousavi that the new camera could not be used to conduct surveillance inside the truck and that the new camera would function in the same manner as the previous camera. Id. Mousavi states that he agreed to the installation of a new camera based upon Mallory's representations about how the camera would function. Id.

On April 21, 2017, Mousavi spoke to Javada Walker, an employee at JCT's safety department in Sapulpa, Oklahoma, and Walker allegedly said that she had been "watching him in his cab, listening to his phone conversations, and that she 'loved listening to him in his native language.'" Id. at 4. Mousavi came to believe that Walker was frequently observing and listening to him inside his truck, and he states that a device was installed inside his truck by JCT to allow this type of observation of him. Id. He claims that the device did not require a "triggering event" to start recording, and he claims that he was constantly under surveillance while inside his truck. Id. Mousavi used his truck's Bluetooth feature to make calls and he believes that all of his phone calls were recorded. Id. Mousavi discussed his concerns with Rick Ates, a dispatcher for JCT, and Ates agreed to speak to Mallory about the recording device inside Mousavi's truck. Id. Mallory allegedly admitted that a recording device had been placed in Mousavi's truck, and Mousavi subsequently asked Mallory to remove the recording device from his truck. Id. at 4-5. Mallory told Mousavi that Mallory's supervisor, Shannon Crowley, wanted the device to remain in Mousavi's truck for another four to six weeks. Id. at 5. Ates was not aware of any other drivers who had similar devices placed inside their trucks, and Mousavi states that he examined several other JCT trucks and did not find a recording device inside the trucks. Id.

On April 25, 2017, Mousavi returned to his home in California and visited a physician. Id. Mousavi claims that he was so upset by the discovery of a recording device in his truck that he suffered severe anxiety, and he advised JCT that he was unfit to drive due to his mental state. Id. JCT informed Mousavi that he needed to resume driving and Mousavi returned to work on April 30, 2017. On May 5, 2017, Mousavi states that he was driving down a narrow road in Missouri, and he drove off a soft shoulder on the road and tipped over his truck. Id. at 6. JCT placed Mousavi on a 30 day suspension and subsequently terminated his employment. Id. Mousavi states that JCT maintained an escrow fund to which he contributed and he has not received a final accounting of any funds owed to him from the escrow fund. Id. He also believes that JCT received an insurance payment following the accident and that he may be entitled to a portion of the insurance payment. Id. Mousavi filed this case alleging claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2520 (ECPA), and 42 U.S.C. § 1981 against JCT and Three Diamond Leasing, LLC. He has also alleged state claims of invasion of privacy, negligence, and breach of contract.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided

within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants argue that plaintiff has failed to state a claim upon which relief can be granted under the ECPA, § 1981, and Oklahoma tort law, and they ask the Court to dismiss those claims. Defendants request that the Court decline to exercise supplemental jurisdiction over plaintiff's remaining breach of contract claims.

### A.

Defendants assert that plaintiff has failed to adequately allege that they intentionally intercepted any electronic communication or that he had a reasonable expectation of privacy. Dkt. # 9, at 9-13. Defendants also argue that plaintiff consented to the placement of a camera in the cab of his truck, and plaintiff's allegations that defendants were listening to his communications without his consent are misleading. Id.

Under 18 U.S.C. § 2520, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" in violation of federal criminal law concerning the interception of such communications has a civil remedy for damages and equitable relief. Plaintiff alleges that defendants intentionally intercepted communications from his cellular phone without his consent in violation of 18 U.S.C. § 2511(a), which makes it a crime to intentionally intercept or attempt to intercept any wire, oral, or electronic communication of another person.[1] Dkt. # 2, at 7. It is not unlawful for person to intercept another person's wire, oral, or electronic communications when consent to intercept the communications was given. 18 U.S.C. § 2511(d). Plaintiff bears the burden to establish that defendants committed a violation of the ECPA, but defendants have the burden to show that plaintiff consented to the interception of any communication. In re Pharmatrak, Inc., 329 F.3d 9, 19 (1st Cir. 2003).

The Court will quickly dispose of two of defendants' arguments. First, defendants argue that plaintiff has not adequately alleged that defendants intentionally intercepted any communications, and they claim that any inadvertent interception of communications is not sufficient to impose liability under § 2520. Dkt. # 9, at 10. Defendants suggest that telephone calls could have accidentally been recorded if plaintiff had his phone calls broadcast through speakers connected to the truck's Bluetooth system. For the purpose of a motion to dismiss, the Court cannot disregard the well-pleaded allegations of the complaint, and plaintiff has alleged that defendants placed a

---

[1] It is possible that defendants are challenging the constitutionality of § 2511 to the extent the statute can be applied to private conduct. However, this argument is suggested in a footnote and is based only on a 1974 decision by a federal district judge in South Carolina. Dkt. # 9, at 9 n.4. Plaintiff requests that defendants be required to more clearly raise any constitutional challenge and the Court agrees. The Court declines to consider defendants' possible constitutional challenge to § 2511, and defendants must raise this issue in a manner that allows plaintiff to fully respond to defendants' argument.

recording device in the cab of his truck. Dkt. # 2, at 3. Plaintiff claims that a JCT employee, Walker, said that she had been watching and listening to his phone conversations and she "loved listening to him in his native language." Id. at 4. When plaintiff asked a co-worker to learn more about the recording device in his truck, plaintiff claims that his supervisor became upset that plaintiff had discovered the functionality of the recording device, and plaintiff's allegations support an inference that the supervisor knew that plaintiff's actions and conversations were being recorded. Id. at 4-5. Defendants suggest an alternate possibility as to how plaintiff's phone conversations were overheard, but defendants arguments are more suitable for a motion for summary judgment. At this stage of the case, plaintiff has adequately alleged facts supporting his belief that he was subject to intentional surveillance by defendants. Second, defendants argue that plaintiff consented to the placement of a camera in his truck and he waived the right to complain about the interception of any communications. Plaintiff alleges that he consented to the installation of a new camera after he was expressly told that the camera could not videotape or record inside the cab of his truck, and he alleges that recording device actually did both of those things. Id. at 3. To the extent that plaintiff did provide consent, defendants' actions allegedly exceeded the scope of plaintiff's consent; thus, consent is not a basis to dismiss plaintiff's statutory claim of illegal interception of electronic communications.

Defendants argue that the cab of plaintiff's truck was merely his workplace and he did not have a reasonable expectation of privacy in any communications that may have been intercepted. Dkt. # 9, at 11-13. The ECPA defines "oral communication" as any "oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic

communication." 18 U.S.C. § 2510(2). The Tenth Circuit has determined that "Congress intended this definition to parallel the 'reasonable expectation of privacy test' articulated in [Katz v. United States, 389 U.S. 347 (1967)]." United States v. Turner, 209 F.3d 1198, 1200 (10th Cir. 2000). To determine whether plaintiff had a reasonable expectation of privacy, the Court must consider (1) "whether the [plaintiff] manifested a subjective expectation of privacy in the area searched" and (2) "whether society is prepared to recognize that expectation as objectively reasonable." United States v. Ruiz, 664 F.3d 833, 838 (10th Cir. 2012).

Defendants argue that plaintiff did not exhibit a subjective intention to maintain privacy in the cab of his truck, because he used the truck's Bluetooth system to make phone calls and he allowed defendants to install a camera in the vehicle. Dkt. # 9, at 11. Defendant's argument is based on a limited and misleading reading of the complaint. The Court has already considered and rejected defendants' argument that plaintiff consented to the installation of a camera that recorded his activities inside the cab of the truck, because he clearly alleges that he did not consent to anything other than a forward-facing camera that recorded activities outside of the truck. As to plaintiff's use of Bluetooth, the complaint does allege that plaintiff used his truck's Bluetooth system, but he alleges that defendants were intercepting his communications by means of a separate recording device. The complaint contains sufficient allegations concerning plaintiff's subjective belief that he maintained a right of privacy in his truck, and plaintiff has alleged facts that would support an inference that he had a subjective intention to maintain privacy within his truck.

The Court has reviewed the parties' arguments as to whether plaintiff had an objectively reasonable expectation of privacy in the cab of his truck and finds that this is a factual issue that cannot be resolved in ruling on a motion to dismiss. Defendants argue that the vehicle was simply

7

plaintiff's "workplace" and plaintiff could not reasonably expect to have the same level of privacy that he would in his home. Dkt. # 9, at 11 (citing Williams v. City of Tulsa, Oklahoma, 393 F. Supp. 2d 1124, 1129 (N.D. Okla. 2005)). Plaintiff responds that his truck was not a traditional workplace, and he "spent almost every waking moment in his truck while on the road." Dkt. # 16, at 14. Plaintiff states that he slept in his truck, made personal phone calls, and relaxed after he had finished driving for the day, and he claims that it would be objectively reasonable to believe that he could be free from surveillance inside the cab of his truck. Id. It would be premature for the Court to conclusively resolve this fact-intensive issue, and plaintiff has alleged sufficient facts to support an inference that he could have an objectively reasonable expectation of privacy inside of his vehicle.

Defendant's motion to dismiss plaintiff's claim under the ECPA should be denied. The complaint contains sufficient allegations to support plaintiff's belief that defendants placed a surveillance device in the cab of his truck, and he has clearly alleged that he did not consent to the placement of such a device. Plaintiff has also alleged facts that would support an inference that he had a subjective and objectively reasonable belief that he had a right to privacy in the cab of his truck.

**B.**

Defendants claim that they did not interfere with plaintiff's ability to make or enter into a contract because of his national origin, and plaintiff has failed to state a claim for relief under § 1981. Dkt. # 9, at 12-13. Plaintiff responds that § 1981 has been construed to apply to claims concerning discriminatory conditions in the workplace, and he asks the Court to deny defendants' motion to dismiss.

Claims of employment discrimination under § 1981 are evaluated under the same standards that are applicable to claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII). Payan v. United Parcel Serv., 905 F.3d 1162 (10th Cir. 2018); Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1194 (10th Cir. 2011). At the pleading stage, a plaintiff is not required to set forth a prima facie claim of discrimination, but the plaintiff must allege sufficient, non-conclusory facts to support a plausible claim of workplace discrimination. Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012). However, courts may use the elements of a prima facie case of discrimination to help determine whether the plaintiff has alleged a plausible claim of discrimination. Id. To establish a claim of race or national origin discrimination, a plaintiff would be required to show that "(1) the [plaintiff] belongs to a protected class; (2) the [plaintiff] suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." EEOC v. PVNF, LLC, 487 F.3d 790, 800 (10th Cir. 2007).

The parties dispute whether § 1981 applies to general claims of discrimination or only claims related to the making and enforcing of contracts. The Court finds that it is unnecessary to resolve this issue, because plaintiff's allegations of national origin discrimination are conclusory and do not state a plausible claim of discrimination. Plaintiff states that he is American citizen of Iranian descent and, "on knowledge and belief, at the time of the accident, he was the only driver at JCT who was of Iranian descent." Dkt. # 2, at 5. The bulk of the allegations of plaintiff's complaint concern the alleged surveillance device placed in the cab of his truck, but he does not allege that he was otherwise harassed or discriminated against because of his national origin. In fact, he alleges that he had been employed by JCT since 2012, and his allegations suggest that he generally got along well with his co-workers. Plaintiff makes the conclusory allegation that he was treated differently

9

than similarly-situated "white employees," but this type of conclusory allegation is not entitled to a presumption of truth. Khalik, 671 F.3d at 1193. While the alleged use of a surveillance device would be unusual, there is nothing about plaintiff's allegations concerning defendants' use of a surveillance device that would be inherently discriminatory, and plaintiff's allegations do not support a plausible inference that his national origin had anything to do with defendants' alleged misconduct. Plaintiff's claim under § 1981 should be dismissed under Rule 12(b)(6).

## C.

Defendants claim that plaintiff consented to the placement of a camera in his vehicle and, based on plaintiff's consent, defendants cannot be held liable under Oklahoma law for invasion of privacy. Dkt. # 9, at 14. Plaintiff responds that he did not consent to the installation of a device that recorded his activities inside the cab of his truck, and he argues that defendants' conduct was highly offensive to a reasonable person. Dkt. # 16, at 9.

Oklahoma courts recognize the tort of invasion of privacy by intrusion upon a person's seclusion, and this tort has two elements: "(a) a noncensensual intrusion (b) which was highly offensive to a reasonable person." Gilmore v. Enogex, Inc., 878 P.2d 360, 366 (Okla. 1994). This tort is not available for every intrusion upon a person's privacy, and the Oklahoma Supreme Court has noted that "[t]here is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual." Munley v. ISC Financial House, Inc., 584 P.2d 1336, 1338 (Okla. 1978). An intrusion occurs only when "an actor 'believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.'" Dubbs v. Head Start, Inc., 336 F.3d 1194, 1221 (10th Cir. 2003). The

Oklahoma Supreme Court has favorably cited Restatement (Second) of Torts § 652B, and the Restatement broadly describes the types of activities that can constitute an invasion of privacy:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

RESTATEMENT (SECOND) OF TORTS § 652B (AM. LAW. INST. 1977).

The parties' arguments concerning plaintiff's invasion of privacy claim are very similar to their arguments as to plaintiff's expectation of privacy for his ECPA claim. Defendant argues that it was not highly offensive to a reasonable person to allegedly place a recording device inside plaintiff's truck, because he knew about the device and consented to having the device installed. Dkt. # 9, at 14. Defendants claim that plaintiff made personal phone calls from his truck, even though he knew that his calls might be overheard. The Court has already rejected defendants' argument that plaintiff consented to the installation of a device that recorded his activities inside the cab of the truck, and the Court has also found that it cannot resolve the fact-intensive issue of whether defendants' alleged conduct would violate an objectively reasonable expectation of privacy. For the same reasons, the Court finds that defendants' motion to dismiss should be denied as to plaintiff's invasion of privacy claim.

**D.**

Defendants argue that plaintiff's negligence claim should be dismissed, because defendants had no duty to prevent plaintiff from injuring himself and plaintiff has not cited a state or federal regulation that would support liability under a theory of negligence per se. Dkt. # 9, at 15. Plaintiff argues that the Federal Motor Carrier Safety Regulations (FMCSR) require a motor carrier to ensure that a driver is mentally fit to drive, and these regulations may be used to form the basis for a negligence per se claim against defendants. Dkt. # 16, at 20.

Plaintiff devotes most of his argument in support of his negligence claim to the issue of whether federal regulations may be used as the basis for a negligence per se claim under Oklahoma law. See Howard v. Zimmer, 299 P.3d 463 (Okla. 2013). However, defendants do not dispute this settled issue of Oklahoma law and plaintiff's argument largely misses the point of the argument raised in defendants' motion to dismiss. Under Oklahoma law, a plaintiff is permitted to refer to statutory law to show that the defendant owed a duty to the plaintiff, rather than a common law duty, and this is known as negligence per se. Howard, 299 P.3d at 467. To establish a claim of negligence per se, the plaintiff "must demonstrate the claimed injury was caused by the violation, and was of the type intended to be prevented by the statute. Finally, the injured party must be one of the class intended to be protected by the statute." Id. The Oklahoma Supreme Court rejected prior decisions of the Oklahoma Court of Civil Appeals and found that federal regulations may supply the basis for a statutory duty for a negligence per se claim under Oklahoma law. Id. at 469. The issue in this case is not whether federally regulations in general may be used to supply the statutory duty for a negligence per se claim but, instead, defendants argue that this was not the type of injury to be

12

prevented by the FMCSR and plaintiff does not fall within the class of persons protected by the federal regulations.

The FMCSR require that a driver be medically examined before operating a tractor-trailer, and this requirement applies to "[a]ny driver whose ability to perform his or her normal duties has been impaired by a physical or mental injury or disease . . . ." 49 C.F.R. § 391.45. Part 391 of the FMCSR generally "establish minimum qualifications for person who drive commercial motor vehicles as, for, or on behalf of motor carriers," and the regulations also "establish minimum duties of motor carriers with respect to the qualifications of their drivers." 49 C.F.R. 391.1. The FMCSR generally concern the qualifications of driver to safely operate a tractor trailer, but these regulations are frequently cited in cases in which the driver of a tractor-trailer is accused of causing an injury to another person by negligent operation of his vehicle. See Asbury v. MNT, Inc., 2014 WL 6674475 (D.N.M. Aug. 6, 2014). Plaintiff has cited no authority suggesting that the FMCSR were intended to protect drivers from harming themselves when operating a tractor-trailer, but courts interpreting these regulations have broadly stated that the FMCSR are intended to promote highway safety. Soo Line Railroad Co. v. Werner Enterprises, 826 F.3d 413, 419-20 (8th Cir. 2016); Owner-Operator Independent Driver Ass'n, Inc. v. Dunaski, 2010 WL 3548472 (D. Minn. Sep. 7, 2010). However, certain aspects of the FMCSR are not aimed at protecting the driving public, and courts have considered on a case-by-case basis whether the specific regulation can support a negligence per se claim. Hill v. Western Door, 2005 WL 2991589 (D. Colo. Nov. 8, 2005).

The regulation at issue in this case requires that drivers be medically examined before they are permitted to operate a commercial motor vehicle. The specific part of the regulation cited by plaintiff states that "[a]ny driver whose ability to perform his or her normal duties has been impaired

13

by a physical or mental injury or disease" must receive medical certification before being deemed qualified to drive. Plaintiff argues that the regulation is intended to protect drivers and the public, but he provides no analysis or legal authority to support this argument. The Court's research suggests that drivers typically view this regulation as a penalty that keeps them from driving, and this regulation is cited in numerous disability discrimination cases in which drivers allege that they were prevented from driving due to the requirement to obtain medical certification. Perry v. Dillon's Bus Serv., Inc., 2017 WL 2537011 (D. Md. June 9, 2017); Cooley v. East Tennessee Human Resource Agency, Inc., 720 F. App'x 734 (6th Cir. Dec. 22, 2017); Ortiz v. Elgin Sweeping Servs., Inc., 2011 WL 1930693 (N.D. Ill. May 17, 2011); Cooke v. C. Bean Transport, Inc., 72 F. App'x 740, 744 (10th Cir. July 16, 2003).[2] In terms of a tort duty, the Court finds that the requirement for drivers of commercial motor vehicles to submit to a medical examination makes significantly more sense if the regulation is construed to benefit the driving public from drivers who are unfit to operate a tractor-trailer. Drivers who believe that they pose a risk to themselves due to a mental injury or disease can request a medical examination, and they can essentially protect themselves without imposing such a duty on their employers. The Court does not find that plaintiff falls within the class of persons to be protected by § 391.45 and he cannot rely on this regulation to support a negligence per se claim under Oklahoma. The Court finds that plaintiff's negligence claim should be dismissed.

**E.**

Defendants ask the Court to dismiss plaintiff's breach of contract claims for recovery of insurance proceeds and escrow funds, but this argument is based on an assumption that the Court

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

would dismiss plaintiff's other claims. Dkt. # 9, at 19. Defendants argue that the Court should decline to exercise supplemental jurisdiction over plaintiff's breach of contract claims if the Court finds that plaintiff's other claims should be dismissed. Id. The Court has not dismissed all of plaintiff's claims, and the Court has federal question jurisdiction over plaintiff's ECPA claim. Therefore, the Court can continue to exercise supplemental jurisdiction over plaintiff's breach of contract claims and defendants' request to dismiss plaintiff's breach of contract claims should be denied.

**IT IS THEREFORE ORDERED** that Defendants John Christner Trucking, LLC and Three Diamond Leasing, LLC's Motion to Dismiss and Brief in Support (Dkt. # 9) is **granted in part** and **denied in part**: the motion is granted as to the dismissal of plaintiff's claim under 42 U.S.C. § 1981 and his negligence claim under Oklahoma law, and the motion is denied in all other respects.

**DATED** this 19th day of April, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE